The first argument today is Salu v. Miranda and we have Mr. Diedrich arguing for the appellants. Mr. Diedrich. Yes, your honor. I'm pressing my buttons here. It's on video. All right, there you go. May I begin? Yes. May I please the court. My name is John Diedrich. I'm an attorney for the appellants Rotimi Salu and Gerard Lynch. Black lives matter. Black jobs and black careers matter. The Black Lives Movement is fighting systemic racism in policing. This case is about systemic racism against healthcare workers in New York State. The New York State Justice Center knocked down Rotimi Salu, a young Penn career counselor, and it knocked down another client of mine, Kerry Walker. The Justice Center has a process that denies workers due process every stage of the way. The workers do not get notice of accusations initially. They don't get notice when the state substantiates charges against them, finding them basically guilty without any hearing, any opportunity to defend themselves or give their side of the story. And then it delays. Normally at that point in time, the employee is fired from their job if they work in the private sector. And then it takes two years or so before there's finally a hearing before a Justice Center ALJ, who's a Justice Center lawyer in this small agency. And at that hearing, as shown in the appendix of my brief, the Justice Center almost always, 97 or so percent of the time, adjudicates the case based upon the investigatory file of the Justice Center investigator. In other words, the accused has no opportunity whatsoever to confront the evidence against him or her or the accuser. 97 percent of cases where there's no confrontation allowed by the accused worker in this regime, most as I... Mr. Dietrich, let me just ask you, because I don't want, I don't want you to use up all your time going through the various procedures or lack thereof, as you would argue, but how do you get around 11th Amendment immunity with respect to your claims? Well, there's perspective relief we're seeking. For example, Gerard Lynch, he's been permanently debarred. So this court can give him relief by saying the due process procedures were bad and that therefore they should take him off the exclusion list so he can go back to his employment. Same thing with my other client. He, he, the Justice Center just doesn't do this internally. They notify the employer who then won't hire my client back because he's been neglected. What about the case law that we've said over and over again, that to the extent there are any due process issues in the state procedure, there's Article 78 that could rectify them. Why, why, why can you bring a due process claim where the state has Article 78? Your Honor, exactly. When I had these three different people come to me at three different times, all with the same story, each Afro-American, and then I went to two of the hearings and tried the Justice Center them myself. I saw this is a, in so many different respects, violative of due process. It's a systemic problem. So what I did was I filed the lawsuit in federal court, which included my Article 78 supplemental claim. The next day, I filed Article 78 in Saluz and Lynch's case. So there are, there is in fact, Article 78 pending in both these cases. However, the due process issue really should be for this court to determine. As I pointed out. We've said over and over again that Article 78 is a sufficient procedure to address these types of situations. Your Honor, Article 78 normally is in a, in a case where there's a regular, normal adjudicatory trial at a ALJ for the, for example, the Department of Labor, Department of Environmental Conservation, Department of Health. When they do a trial and there is a decision, it makes sense that that decision be reviewed in state court. But the ALJs don't even make the final decision. The executive director does. And then the, the, the appellate divisions use a substantial evidence test to basically rubber stamp, as long as there's some indication that there's validity, they uphold the decisions. So basically you have a fundamental, on many levels, denial of due process. And the state courts aren't really this. Yeah. So this court should not advocate it's fault. Sorry, Your Honor. Yeah. I want to ask you about Westchester Medical. I don't know. It seems like, as you focused here today, that your issue is really with the Justice Center and the adjudication that happened there. I don't understand. There's a lot in the complaint about claims of race discrimination by the director of nursing. But ultimately, they didn't remove your, your client until, until the Justice Center adjudicated him guilty of neglect two years later. So wasn't it really the Justice Center's action that led to his removal from the hospital? And I guess ultimately, Diamond is the one who terminated him, right? When, uh, no, no, you're, I get something wrong. Was the decision maker in the termination. They told Diamond, Sulu has to yes. And the reason I didn't bring a claim regarding Lynch for his employment is because yeah, in Lynch's case, you could say, you know what the agents, sorry, the employer was looking at what the Justice Center would do. But as to the Sulu matter, the Westchester Medical Center folks were the ones that handed the case over to the Justice Center. They suspended my client right away, which I didn't need to do. And, and, and, but the Justice Center made its own independent determination. They determined, and I think you can correct me if I'm wrong, your client conceded that he left the patient alone. He says that the reason he didn't come back quickly was because he got into a fight with another patient. But the Justice Center said in their findings, that was conceded. And they also, uh, uh, said that the patient obviously was, uh, that he left was suicidal, uh, risk of self-mutilation. So those weren't things that the hospital gave. Yes. Yes. Right. I was at, I did that trial and at the Justice Center trial, the Justice Center offered not any, not one scintilla, non-hearsay evidence on any of these subjects. In other words, if I had an actual nurse or, or other professional that I could have quasi-examined or examined, your professional, I think would have said, you know what? Blinking, not having your eyes continuously on a patient who's standing two feet from you is not neglectful in any way. It happens all the time. If I had any witness, any accuser, and there isn't even an at the Iris Chester Medical Center. Basically, uh, it's the Justice Center that that pursued this with a lay investigator, assuming that because there's notes of somebody had suicidal ideations, that that somehow means you have to guard this person as if there a murderer, a felon who has to be handcuffed. And that's ridiculous, your honor. I think if any actual witness was present that could have been examined, that would have been clear. We don't even have an accuser from the West Chester Medical Center, the employer. So basically, it allows the Justice Center to do its dirty work to be the tool for All right. You have three minutes. You have three minutes for a rebuttal. I think we understand your position. Let's let's hear from the other side. Thanks. Um, all right. We have representing the Justice Center defendants, Mr. Rube. Yes. May it please the court. Mark Rube for the Justice Center defendants. The district court correctly dismissed plaintiff's claims against the Justice Center defendants. First, the 11th Amendment bars all damages claims against the Justice Center and its officers. Claims, equitable claims fail as well because the ex parte Young exception does not apply here. That exception does not apply to claims against the Justice Center or claims arising under state law and the federal claims against the individual defendants fail because an injunction directed at future Justice Center proceedings will offer no relief to plaintiffs whose proceedings have already concluded. Second, immunity. Before you get to that, his argument, as you heard, was that he's been barred from employment in the industry, that that could be the prospective relief that his client could get. Why wouldn't that potentially under ex parte Young be something they could pursue? So in his complaint, the only federal claims that he seeks prospective relief go to future Justice Center proceedings that would affect other individuals. He does, in his Article 78 claim, seek annulment of the violations, but the ex parte Young does not apply to state law claims. And in any event, those claims fail under the merits as well, which I'll discuss, but I would like to first talk briefly about the immunity doctrines. The ALJ defendants are entitled to judicial immunity because the only conduct alleged concerning them involves the decisions that they issued and plaintiffs underlying administrative proceedings. The executive director is entitled to qualified immunity. The Justice Center procedures do not violate any clearly established precedents. Consistent with this court's decision in Valmonte, plaintiffs received adversarial hearings with an opportunity to cross-examine present witnesses. They received the opportunity to subpoena additional witnesses. And if there were any defects in those proceedings, and we say there are not, but if there were any, they were entitled to seek Article 78 relief. And they have, and those Article 78 petitions are pending in the third department. And I understand that they are, we anticipate argument in November in the third department in those Article 78 petitions. Further, there's no allegations of individual participation in any constitutional, in any race discrimination by the executive director or the ALJ defendants. There's just bare conclusory allegations about the races of particular individuals involved, but nothing of intentional discriminatory animus. And just to address Mr. Dietrich's due process claims about cross-examination, as I mentioned, they were entitled to cross-examine those witnesses that were present, bring their own witnesses, and subpoena any adverse witnesses that they wanted to cross-examine and did not do so. If the court has any questions, I would be happy to answer them. Otherwise, I will rest on our briefing. All right. Thank you, Mr. Group. We'll now hear from Mr. Clark on behalf of the Westchester Medical Center defendants. Good morning, Your Honors. May it please the court, may it please co-appellate counsel and opposing counsel. I'm Brian Clark from Venable LLP. I'm here on behalf of Appellant Westchester Medical Center on Appellant Saloo, just Appellant Saloo's appeal of the dismissal of his race discrimination claims. Based on the pleadings in the amended complaint, the salient facts are Saloo worked at Westchester Medical Center as a patient care technician in the adolescent psychiatric department. He was not a regular full-time employee of Westchester Medical. Rather, he was an agency or leased employee provided to the hospital by Diamond Healthcare. In May 2016, Saloo was involved in an incident which resulted in a New York State Justice Center investigation into claims of patient abuse and neglect. Saloo was suspended pending the investigation, and then upon the Justice Center finding that Saloo had engaged in patient neglect, which was abandoning a patient to which he had been assigned to do a one-to-one observation, Westchester Medical informed Diamond that it did not want Saloo assigned to its facility. I will note the complaint makes no allegations as to whether Diamond sought to assign Saloo elsewhere or otherwise terminated his employment. Diamond was a defendant earlier in this case, but was voluntarily dismissed by Saloo. Westchester Medical was not involved at all in the Justice Center proceeding. It was not a party. It had no involvement. Westchester Medical submits the decision of the district court dismissing Saloo's claims of racial discrimination against Westchester Medical was proper and should be upheld. Specifically, Saloo's claims fail because nowhere in the complaint does he make any allegation tending to show that Westchester Medical's decision to tell Diamond it no longer wanted him assigned to the facility. There's no allegation to show that decision was motivated by race. He alleges no direct evidence of discriminatory intent, and he makes no allegation of any similarly situated non-African Americans being treated differently in similar circumstances. Specifically, nowhere does he allege that a similar leased or agency employee, non-African American, was not terminated or separated upon a finding of patient neglect. Even more so, he does not even mention any regular full-time employee of Westchester Medical Center not being terminated or suspended upon a finding of patient neglect. The allegations upon which, especially in his brief, he argues his claim are both irrelevant and conclusory. In some, he makes no allegations tending to show that he was treated differently because of his race. And finally, your honors, as shown in Appellant's argument, he seems to keep on arguing that Mr. Saloo didn't do it or it wasn't a proper finding. As I think the court well knows, in a discrimination inquiry, an employer's decision can be good or bad. The proper inquiry is whether it was motivated by race, and he makes no allegation tending to show any racial motivation. And so accordingly, the district court's decision was proper and should be upheld. All right. Thank you, Mr. Clark. Mr. Diedrich, you have three minutes of rebuttal time. Thank you, Judge. I disagree with Mr. Clark fully. I think the record is clear that race discrimination motivated the medical centers, Ms. Davis, to refer, basically refer this thing to the justice center. Based upon a neglect finding, there was no need to fire the employee because under the social services rules, neglect really means extra training, counseling, do better. It's not a criminal neglect. It's a social services law neglect. So they just the medical center did not need to fire. But you don't you know, some of those similarly situated some of those people that are cited in the complaint. There's no there was no adjudication of any neglect alleged with respect to to those people. Right. It wasn't you don't have anybody. You don't have anybody who is adjudicated to have been neglectful who was not removed. Well, your honor, this is I mean, I'm switching back and forth between my due process things complaint versus the justice center. Now, this is this is on the race claim. You're saying that he was treated differently based upon his race. And I don't think you allege that there's there was any, for example, white employee who was found. There was a substantiated finding of neglect who the hospital retained. Right. Well, your honor, you're you're you're I mean, to be able to find whether justice center cases result. Well, let me put it this way. We looked at five hundred eighty eight justice center online cases of those four example, as I mentioned in only 18 of those. What did the justice center offer direct evidence? And also, statistically, most of these health care workers are either Hispanic or Afro-American. So the vast majority this is a Jim Crow system. Your honor, the vast majority of health care workers are minority. The vast majority of patients are white. You know, and the and the accusers, the employers tend to be white. And then in the case of Ms. Davis, she made a racist statement about Afro-American nurses not being allowed up to the second floor. She was the one who based upon non-misconduct or arguably maybe a neglect by not strictly adhering to an unsigned policy that there's no evidence that is really strictly complied with based on that. Am I mistaken? It's my impression and I may be mistaken that there is a statute that required the reporting of the incident to the JC. Is that wrong? Your honor, it's it's correct. Law that if there's suspected neglect or abuse, it's supposed to be reported. And as I indicated regarding the due process issue, that results in the accused not being notified of what they're being charged up. And then then a substantiation where there's absolutely no notice, not to to be heard. That's a lot of no violation, which that alone should allow for damages. You can't really argue. You cannot very well argue that the fact of the reference to JC was motivated by race if it's required by law. Well, of course, I can argue that, your honor, because because, for example, the internal policy, this one on one policy, it's an internal hospital policy. It's not a regulation, state regulation. There's no reason to believe that taking your eyes off a patient because you're being attacked by another patient is any kind of of neglect. So that wouldn't be a reason to go to the justice center. And the reason my client was the whole matter went to the justice center was that the first other child who actually physically assaulted and tackled my client, that person who was white and their parents complained and then that became an abuse charge. But that was not substantiated because it was you know, there's no substantial. I mean, no reason. Mr. Peter, let me just ask you one more question. I see your time is up, but I forgot to ask you this in the beginning. I mean, you abandoned your 1983 claim and you're trying to pursue an appeal in 1981 claim. But I think it's clear that these are state actors. So I don't understand why you're pursuing a 1981 claim and have abandoned the 1983. I don't believe I abandoned the medical complaint includes a 1983 claim. It says, you know, this new equal protection claim, I think the second claim for relief and and also 1981, whether it's against a governmental official, which then should be through 1983. And I think for limitations purposes, Ron, I don't think if you know, if I didn't specifically reiterate in the first course of action, this is a 1981 claim pursuable against a municipal employer under 1983. And if that was an omission, I think that's something I don't think that should be. All right. I understand. All right. Thank you very much to all of you. A reserve decision. Thank you. Have a good day. Thank you. Thank you.